United States District Court
Southern District of Texas
**ENTERED**
June 20, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 24-cr-371 |
| | § | |
| MARY BROWN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The government indicted 53 defendants for conspiracy to commit and for committing wire fraud in a scheme to obtain bail bonds based on false statements of cosigners' income and employment. Many of the defendants have moved to dismiss the superseding indictment or the specific counts against them and moved to adopt the motions filed by their codefendants.[1] The court ordered that each defendant is deemed to adopt the motions of the codefendants unless a defendant informs the court that he or she does not do so. No defendant has done so. The court addresses the motions to dismiss as applying to all of the defendants, except those motions that apply only to specific defendants.

---

[1] Besides asking the court to allow each defendant to adopt their codefendants' motions, many of the defendants also filed motions to dismiss the counts against them. Those motions are listed here, in order of the defendant number in the indictment. *See* Docket Entries Nos. 739, 812, 1068 (Mary Brown); 696 (Eugene Walker); 746 (Kamishilia Mathis); 762 (Nicholas Yoder); 744 (Deleon Borders); 738 (Jeanine Victor); 790 (Xavier Francis); 784 (Tierra Celestine); 750 (Derrick Washington); 764 (Desman Tolliver); 745 (Marquale Goston); 706, 1065 (Patrick Brown); 743 (Michael Ford, Jr.); 757 (Cornelius Brown, Jr.); 768 (Gerald Williams, Jr.); 747, 1088 (Antoinette Green); 737 (Darris Lee); 763 (Meghan Tillis); 754 (Aaliyah Thomas); 761 (Chelsea Battle); 852 (James Palladina); 732 (Calvin Skrivanek); 751 (Rashad Derrick); 769 (Roemello Burros); 1054 (Katherine O'Brien); and 767 (Sheba Muharib).

Based on a careful review of the superseding indictment, (Docket Entry No. 890), the motions and supplemental motions to dismiss, the responses, the replies, and the applicable law, the court denies the motions to dismiss. The reasons are explained below.

## I. Background

The July 2024 indictment charged conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. § 1343. Two defendants, Sheba Muharib and Oscar Wattell, were also charged with crimes by or affecting persons engaged in the business of insurance whose activities affect interstate commerce, in violation of 18 U.S.C. § 1033.

The May 2025 superseding indictment alleges that employees of a Houston-based bail bonds company, AABLE Bonds, conspired with others to falsify and to obtain falsified cosigner financial and employment reports to qualify individuals detained on criminal charges for bail bonds. (Docket Entry No. 890 at ¶ 10). The superseding indictment alleges that when a third party cosigns a contract between a detainee and the bail bond company, the cosigner becomes an additional party to the bail bond contract, enabling an incarcerated individual to be released on bond by paying a percentage of the amount set by the court. (*Id.* at ¶ 4).[2] The indictment alleges that employees of AABLE Bonds falsified cosigners' financial and employment reports and recruited straw cosigners who submitted false financial and employment reports. (*Id.* at ¶ 10). The coconspirators allegedly transmitted the false cosigner documents by electronic means, including

---

[2] The defendants argues that paragraph four of the superseding indictment "conflates two distinct concepts and thereby misstates the law. Under state law, a defendant may either pay the full bond amount in cash, or he may post a surety bond.… [t]he law does not require third-party co-signers for either option." (Docket Entry No. 1061 at 15). The defendants also argue that the superseding indictment implies that the government is empowered to specify that a criminal defendant post only a cash bond, or only a surety bond. (*Id.*). The defendants contend that the court can resolve this issue at this stage. (*Id.* at 14). However, the court finds that deferral of these issues is appropriate until the parties have had the opportunity to conduct further discovery into the mechanics of the alleged scheme.

to Bond-Pro, a provider of remote computing services located in Georgia, as well as the government and insurance companies. (*Id*. at ¶¶ 5,11). The government alleges that because of the false information about the cosigners' finances and employment, the defendants were able to obtain bonds for less money than they would have had to pay if the information had been accurate. (*Id*. at ¶¶ 12, 13).

The superseding indictment alleges that one of the defendants, Sheba Muharib, was the CEO of AABLE Bonds and that Mary Brown, Oscar Wattell, and other defendants were employees of AABLE Bonds. (*Id.* at ¶ 5, 9). Muharib is also an agent of Financial Casualty & Surety. (*Id.* at ¶ 6). The indictment alleges that Financial Casualty & Surety, as well as other insurance companies, relied on the defendants' fraudulent financial and employment information about the cosigners to underwrite the surety bonds and decide whether to assume the risk of paying the full bond amount if the incarcerated individual violated the bond conditions and the bond was forfeited. (*Id.* at ¶ 12).

The government alleges that the defendants made money by saving money; that is, the defendants received a financial gain by obtaining bail bonds based on false information about cosigners' financial and employment status that lowered the amounts the defendants had to pay for the bond. (*Id.* at ¶ 13). The government alleges that the false information enabled the defendants to obtain the bonds at a lower price than they would have to pay had they submitted accurate information. (*Id.*). The government alleges that the defendants intended to deprive the government of the value of what would have been the higher bond amounts paid to obtain the release of an incarcerated individual if accurate cosigner financial information had been provided. (*Id.* at ¶ 14). The government also alleges that the false information about cosigners increased the risk to the insurance companies because the defendants obtained bonds for incarcerated individuals

3

on payment terms that these individuals and the defendants were not eligible to receive, and because the lower bond amounts reduced the risks of loss if forfeiture occurred. (*Id.* at ¶¶ 9, 14).

## II.   The Legal Standard

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). "The sufficiency of an indictment is judged by whether (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, without any uncertainty or ambiguity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Lavergne*, 805 F.2d 517, 521 (5th Cir. 1986); *see United States v. Green*, 964 F.2d 365, 374 (5th Cir. 1992) (an indictment satisfies Rule 7(c)(1) "if it contains [the] essential elements of [an] offense"). Even though the indictment must contain "the essential facts" of the charged crime, the defendant is not entitled to "the evidentiary details by which the government plans to establish his guilt." Fed. R. Crim. P. 7(c)(1); *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986). The Fifth Circuit has explained that "the language of the statute may guarantee sufficiency if all required elements are included in the statutory language." *Id.* at 1171.

Under Federal Rule of Criminal Procedure 12(b), a party may challenge an indictment for failing to state an offense. "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir.2005)). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the

4

allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Moss*, 872 F.3d 304, 308 (5th Cir. 2017) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)).

### III.    Analysis

The superseding indictment alleges that the defendants: (1) intentionally falsified certain income and employment documentation by purported third-party cosigners; (2) submitted those falsified documents to insurance companies serving as underwriters to secure the bonds; and (3) because of the defendants' misrepresentations, the government entered into surety bonds, which allowed incarcerated individuals charged with criminal offenses to qualify for bonds on terms that they were not in fact eligible to receive.  The government argues that the false reports allowed the defendants to obtain bail bonds for detainees by paying a lower cost than they should have paid.

Walker's supplement to his motion to dismiss, (Docket Entry No. 1061), argues that the superseding indictment fails because the government does not allege a scheme whose object was property, and there is no victim of the scheme.  One of the defendants, Mary Brown, also argues that the superseding indictment fails to allege that she acted willfully.  (Docket Entry No. 812). Because the defendants have adopted their codefendants' motions, the court considers these arguments as to all the defendants.

Under 18 U.S.C. § 1343, "[t]o support a wire fraud conviction, the government must prove: (1) a scheme to defraud; (2) the use of, or causing the use of, wire communications in furtherance of the scheme; and (3) a specific intent to defraud." *United States v. Harris*, 821 F.3d 589, 598 (5th Cir. 2016).  Under 18 U.S.C. § 1349, "[t]o prove conspiracy to commit wire fraud, the government must prove that: (1) two or more persons made an agreement to commit wire fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the

5

agreement willfully, *i.e.*, with specific intent." *United States v. Kuhrt*, 788 F.3d 403, 414 (5th Cir. 2015). "Although the central feature of a conspiracy is the agreement, that agreement need not be written or spoken but may be inferred from concert of action." *United States v. Padron*, No. 23-50067, 2024 WL 1171078, at *1 (5th Cir. Mar. 19, 2024) (citing *United States v. Sanders*, 952 F.3d 263, 277 (5th Cir. 2020)).

The defendants argue that the indictment is insufficient because the object of the defendants' scheme was not financial harm. (Docket Entry No. 1061 at 4). Under 18 U.S.C. § 1343, "the Government must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (quoting *Kelly v. United States*, 590 U.S. 391, 391 (2020)). Citing the language of the superseding indictment, the defendants argue that the object of the alleged scheme was "to obtain a bail bond" and that wires were sent "in support of a bail bond." (Docket Entry No. 1061 at 3; citing Docket Entry No. 890 at 7-8). The defendants argue that the language of the indictment makes it plain that their object was not financial gain, but instead to get their friends and loved ones out of jail. (*Id.* at 4).

The defendants argue that none of the incarcerated individuals who received bonds intended to flee or fail to appear in court, which would have forfeited the bond. (*Id.* at 6). Accordingly, the defendants argue that the superseding indictment does not allege an intent to forfeit the bonds, or that any were forfeited. (*Id.* at 7). The defendants argue that the superseding indictment therefore does not allege an intent to require anyone to pay the bond amounts, even if the bonds were obtained using false information about the cosigners' finances and employment. (*Id.*). The defendants argue that the indictment does not allege any deception about the detainees' intent to comply with court orders or conditions on release. (*Id.*). The defendants argue that

6

because the indictment does not allege that the defendants intended that the bonds would be forfeited, the government has not alleged that the government and insurance companies would ever have had to "pay a dollar" because of the scheme. (*Id*. at 8). Citing *Kousisis v. United States*, No. 23-909, 605 U.S. __, 145 S.Ct. 1382 (2025), the defendants argue that any financial harm or harm to other property is incidental to the defendants' object of securing the release on bond of their incarcerated family and friends, making the indictment insufficient. (*Id*.).

In *Kousisis*, the Supreme Court reaffirmed that to convict a defendant for wire fraud, "the traditional property interest at issue 'must play more than some bit part in a scheme.'" *Kousisis*, 145 S.Ct. at 1391 (quoting *Kelly*, 590 U.S. at 402). "Obtaining the victim's money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's fraud." *Id*. (quoting *Kelly*, 590 U.S. at 402, 404). The question is whether the indictment sufficiently alleges that the defendants intended to obtain bail bonds by paying less money than they would have paid had they submitted accurate financial information about cosigners.

The superseding indictment alleges that by falsifying the cosigner information to obtain bail bonds, the defendants paid less than they should have. The object of the defendants' scheme is alleged to be not only to obtain bail bonds for incarcerated friends and family members, but also to deprive the government, and the insurance company, of the additional amounts of money that the defendants would have had to pay if they had submitted accurate information about third-party cosigners' finances and employment. *Kousisis* makes it clear that "a defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off." *Kousisis*, 145 S.Ct. at 1392. Even if the defendants did not intend to forfeit the bonds, "the wire fraud statute is agnostic about economic loss." *Id*. The superseding indictment alleges that the defendants obtained financial gain by providing false

financial information about cosigners to secure the bail bonds. This allowed the defendants to avoid paying the full bond amount to the court, for less money than they would have paid if the cosigners' financial information had been accurate. This alleges a scheme that has as its object both securing the release of an incarcerated individual and paying less money than the defendants would have had to pay if they had submitted accurate cosigner financial information. The object of the alleged scheme was not just to secure the release of a friend or family member; it was to do so at a price lowered as a result of the defendants' fraud. Even if discovery reveals, as the defendants assert that it will, (Docket Entry No. 1090 at 4), that none of the bonds were forfeited, a goal of the scheme was to have the defendants pay less for the bonds than they would have paid if they had provided accurate cosigner financial information. Under *Kousisis,* the object of the scheme is to obtain the money saved.

The defendants argue that the superseding indictment fails because: (1) the government is not entitled to the full cash bond that it would have received had the defendants not entered into the bonds; and (2) the State of Texas has no property rights when it holds a defendant's cash bond. (Docket Entry No. 1061 at 16-18). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2021) (quoting reference omitted). At this juncture, the government has met its pleading burden to allege a scheme to defraud the government and the insurance companies. The government alleges that the defendants' scheme was not just to avoid paying the full bond amounts, but to use false statements about the cosigners' finances and employment to lower the amounts the defendants had to pay for the bonds, thereby decreasing the amounts the government received and increasing the insurance company's risk of default.

8

The defendants also argue that the original and superseding indictments are insufficient because they fail to allege that the defendants' conduct was willful and made with a "specific intent to defraud." (Docket Entry Nos. 812, 1068).[3] Under Fifth Circuit precedent, "wire fraud [is a] specific intent crime[] that requires the government to prove that a defendant knew the scheme involved false representations." *United States v. Nguyen*, 504 F.3d 561, 568 (5th Cir. 2007). "[S]pecific intent in this context requires an intent to both 'deceive *and* cheat' someone." *United States v. Perez-Gorda,* 115 F.4th 653, 656 (5th Cir. 2024) (quoting *United States v. Greenlaw*, 84 F.4th 325, 351 (5th Cir. 2023)).

The defendants concede that under Fifth Circuit precedent, a defendant need not act willfully to violate § 1343, but they urge this court to hold otherwise. (Docket Entry No. 812 at 5). The court is bound by Fifth Circuit precedent. Under the law in this circuit, willfulness is not an element of a wire fraud offense. The government's superseding indictment alleges that the defendants had the intent to both deceive and cheat the government and the insurance company by obtaining the bonds using false financial statements for third-party cosigners and thereby paying less for the bonds than they would have paid had they submitted accurate statements. The government has alleged that the defendants had the requisite mens rea to commit wire fraud.

The defendants argue that the indictment fails to allege that they acted with the specific intent necessary for conspiracy to commit wire fraud under § 1349. The indictment alleges that the defendants "'knowingly, unlawfully and intentionally combine, conspire, confederate and agree with others to commit the offense of wire fraud." (*Id*. at 4) (citing Docket Entry No. 890).

---

[3] Brown also moved to dismiss the indictment on other grounds. (Docket Entry No. 741). However, she does not appear to reurge the arguments made in that motion to dismiss following the superseding indictment, so the court does not address the arguments made in Docket Entry No. 741.

9

The defendants take issue with the fact that the counts alleging wire fraud do not include the word "willfully." (*Id.*).[4]

The court finds that the government has met its pleading burden to allege specific intent under § 1349, as it is required to do. The defendants cite the following cases: (1) *United States v. Bryant*, 854 F. App'x 572, 573 (5th Cir. 2021) (per curiam); (2) *United States v. Kuhrt*, 788 F.3d 403, 414 (5th Cir. 2015); and (3) *United States v. Copeland*, 2021 WL 6102489, at *1 (5th Cir. Dec. 23, 2021) (per curiam). In each of these cases, the Fifth Circuit stated that to prove conspiracy to commit wire fraud, the government must prove that "the defendant joined in the agreement willfully, *i.e.*, with specific intent." *Kuhrt*, 788 F.3d at 414; *Copeland*, 2021 WL 6102489, at *1 (same); *Bryant*, 854 F. App'x at 574 (under § 1349, the government must prove that "the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose"). The superseding indictment clearly alleges that the defendants knowingly, unlawfully, and intentionally conspired to devise a scheme to defraud the government and the insurance companies. (*See* Docket Entry No. 890 at ¶¶ 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42). At the motion to dismiss stage, this is sufficient to allege that in conspiring to commit wire fraud, the defendants had both the "intent to further the unlawful purpose[,] and the level of intent required for proving the underlying substantive offense," and that the defendants "joined the conspiracy with the specific intent to defraud." *Greenlaw*, 84 F.4th at 339 (citing *United States v. Brooks*, 681 F.3d 678, 699, 700 (5th Cir. 2012)).

---

[4] At the June 16, 2025, hearing, counsel for Ms. Brown conceded that willfulness was not required to violate § 1343 or § 1349. Counsel for Ms. Brown stated that Ms. Brown nonetheless moved to dismiss for failure to allege willfulness to preserve these issues for appeal.

Finally, the court addresses Muharib's motion to dismiss Count 48 of the superseding indictment for failure to state an offense. (Docket Entry No. 767). Count 48 charges only Muharib with crimes by or affecting persons engaged in the business of insurance, under 18 U.S.C. § 1033(e)(1)(B). Muharib argues that the indictment is legally insufficient because it does not allege how Muharib's conduct was "willful." (*Id.* at 1). Muharib argues that the allegations fail because the government does not allege that Muharib knew the wrongfulness of her conduct of hiring Wattell, a convicted felon, who she claims was not engaged in the business of insurance. (*Id.*). She also claims that Count 48 should be dismissed for failure to "track [the language of] the statute." (*Id.*).

Section 1033(e) "prohibits individuals from knowingly and willfully permitting convicted felons to engage in the insurance business." *Kernan v. New York State Dep't of Fin. Servs.*, 712 Fed. Appx. 61, 63 (2d Cir. Nov. 2, 2017) (summary order). The statute states that "[a]ny individual who is engaged in the business of insurance whose activities affect interstate commerce" may not "willfully permit[]" the participation of "an[y] individual who has been convicted of any criminal felony involving dishonesty or a breach of trust, or who has been convicted of an offense under this section, and who willfully engages in the business of insurance whose activities affect interstate commerce or participates in such business." 18 U.S.C. § 1033(e)(1)(A)-(B).

The superseding indictment alleges that Muharib "knowing that Co-Defendant Oscar Wattell [] had been convicted of any criminal felony involving dishonesty, engaged in the business of insurance . . . and *willfully* permitted such activity." (Docket Entry No. 890 at ¶ 48) (emphasis added). The superseding indictment alleges that Muharib willfully employed and enabled Wattell to engage in the business of insurance despite knowing that he had previously been convicted of a criminal felony involving dishonesty. This is sufficient to show willfulness.

11

In her reply to the response to the motion to dismiss, Muharib also argues that the indictment fails to allege that Wattell was engaged in the business of insurance. (Docket Entry No. 841 at 2). She argues that the indictment alleges only that Wattell was working for AABLE Bonds. (*Id*.). The court disagrees. The indictment alleges that Muharib was an agent of Financial Casualty & Insurance and that she employed Wattell to work for her. Under 18 U.S.C. § 1033(f)(1), the "business of insurance" is defined broadly to include "the writing of insurance," including "all acts necessary or incidental to such writing or reinsuring." The government's allegations are that as an employee of AABLE Bonds, Wattell was, at the very least, "participat[ing]" in the business of insurance by engaging in acts "incidental" to underwriting the bonds. That is sufficient at the pleading stage.

Finally, Muharib argues that the indictment fails because it does not allege the crime involving dishonesty that Wattell was charged with. Instead, the indictment alleges only that "Co-Defendant Oscar Wattell (2) had been convicted of any criminal felony involving dishonesty." (Docket Entry No. 841 at 2). Muharib cites to no authority requiring the government, at the pleading stage, to specify what crime Wattell was convicted of for the purposes of alleging an offense by Muharib under § 1033(e)(1)(B). Nor is the court aware of any requirement, either under the statute or under the scant case law, requiring that the government plead what crime of dishonesty Wattell was convicted of to charge Muharib under § 1033(e)(1)(B).

Muharib's argument that the government has failed to allege essential elements of the offense of crimes by or affecting persons engaged in the business of insurance, under 18 U.S.C. § 1033(e)(1)(B) is unpersuasive. Her motion to dismiss Count 48, (Docket Entry No. 767), is denied.

## IV.  Conclusion

The motions to dismiss the original indictment and the superseding indictment are denied.

SIGNED on June 17, 2025, at Houston, Texas.

                                              Lee H. Rosenthal
                                Senior United States District Judge